IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

JOHN JONES                              )
                                        )
v.                                      )        Case No. 1:14-0114
                                        )        Magistrate Judge Holmes
CITY OF FRANKLIN, TENNESSEE, et. al.    )

## MEMORANDUM OPINION

This civil action is before the undersigned for all further proceedings, pursuant to the consent of the parties and the order of the District Judge. Docket Entry No. ("DE") 30. Currently pending are two amended motions for summary judgment, one filed by Defendants Shawna Daniel and Williamson Medical Center (collectively referred to as "Defendant WMC") (DE 65) and one filed by Defendants Jeff Carson, Carlos Cordero, Ryan Frazier, Nick Grandy, David Jenkins, Cory Kroeger, Marc Swain, and the City of Franklin, Tennessee (collectively referred to as "Defendant City of Franklin") (DE 68). Also pending is a motion for judgment on the pleadings filed by Defendant Jon Andrew Russell M.D. ("Defendant Russell") (DE 75). For the reasons below, all three motions are GRANTED.

## STANDARD OF REVIEW

A motion for summary judgment is reviewed under the standard that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A "genuine issue of

material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). When considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." *Sowards v. Loudon Cnty.*, 203 F.3d 426, 431 (6th Cir.), *cert. denied*, 531 U.S. 875, 121 S. Ct. 179, 148 L. Ed. 2d 123 (2000). In reviewing a motion for summary judgment, the Court must view the evidence and all inferences drawn from the underlying facts "in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir.), *cert. denied*, 534 U.S. 896, 122 S. Ct. 217, 151 L. Ed. 2d 155 (2001).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 249-50. However, "[t]he moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of evidence to support the non-moving party's case.'" *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 325). "Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003). Additionally, conclusory allegations, speculation, and unsubstantiated assertions are not evidence,

and are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). Therefore, in order to defeat summary judgment, the party opposing the motion must present affirmative evidence to support its position; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

The applicable standard of review for a motion for judgment on the pleadings made pursuant to Rule 12(c) is that for a motion to dismiss for failure to state a claim upon which relief can be granted made pursuant to Rule 12(b)(6). *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001); *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998). A motion to dismiss under Rule 12(c) is directed solely to the pleadings, and is appropriately granted when no material issue of fact exists and the moving party is entitled to judgment as a matter of law. *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). Consideration of a motion to dismiss requires the Court to accept the complaint's well-pleaded factual allegations as true and construe the complaint liberally in the light most favorable to the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Perry v. Am. Tobacco Co., Inc.*, 324 F.3d 845, 848 (6th Cir. 2003).

## PROCEDURAL HISTORY AND FACTS

Plaintiff John Jones ("Plaintiff") filed this action on August 22, 2014, seeking relief under 42 U.S.C. § 1983 and the common and statutory laws of Tennessee to redress alleged violations of Plaintiff's constitutional rights. Originally, the named defendants were the City of Franklin, Tennessee and Williamson Medical Center. DE 1. Plaintiff also named: John Does 1-6, identified

as police officers of the City of Franklin Police Department (DE 1 at ¶ 7); Jane Does 1-2, identified as nurses employed either by Williamson Medical Center or an entity contracted through Williamson Medical Center (DE 1 at ¶ 8); and Jack Doe, M.D., identified as a medical doctor employed either by Williamson Medical Center or by an entity contracted through Williamson Medical Center (DE 1 at ¶ 9).

In the complaint Plaintiff alleges that the John Doe defendants are individuals acting under color of law in the course and scope of their employment as police officers of the City of Franklin Police Department. DE 1 at ¶¶ 10-23, 41-43. Plaintiff alleges that on or about August 21, 2013, officers with the Franklin Police Department detained him without probable cause in the parking lot of the Marriott Courtyard Hotel in the Cool Springs area and questioned him about what drugs he was on in order to get him medical treatment. DE 1 at ¶¶ 10-12. Plaintiff further alleges that, despite his insistence that he was not on any drugs and not in need of medical assistance, the Joe Doe defendants had him transported to the Williamson Medical Center by ambulance. *Id.*

Once Plaintiff was admitted to the Williamson Medical Center emergency room, the police officers instructed Plaintiff to provide a urine sample and a blood sample, to which Plaintiff alleges he did not give consent, in the presence of the emergency room doctor, the Jack Doe, M.D. defendant. DE 1 at ¶¶ 14-17. Plaintiff alleges that when he was unable to urinate in a cup in the presence of medical personnel and police officers, the police officers restrained Plaintiff so that the Jane Doe defendants, who are nurses, could forcefully insert a catheter into Plaintiff's penis to obtain a urine sample. *Id.* at ¶¶ 18-20.

On December 22, 2014, Plaintiff filed a First Amended Complaint, and in place of the John Doe, Jane Doe, and Jack Doe, M.D. defendants named the following individuals: Marc Swain,

Carlos Cordero, Jeff Carson, Ryan Frazier, Nick Grandy, Cory Kroeger, and David Jenkins, all police officers of the City of Franklin Police Department and employed by the City of Franklin (DE 10 at ¶ 7); Shawna M. Daniel, a registered nurse employed by either Williamson Medical Center or by an entity contracted through Williamson Medical Center (DE 10 at ¶ 8); and, Jon Andrew Russell, M.D., a medical doctor employed by either Williamson Medical Center or by an entity contracted through Williamson Medical Center (DE 10 at ¶ 9). Of note, Defendant Russell alleged in his answer to the amended complaint that Plaintiff presented at Williamson Medical Center "with an altered mental status." DE 52 at ¶ 17.

Each of the pending motions contends that Plaintiff's claims must be dismissed because both the original complaint and the amended complaint were untimely filed and are barred by the statute of limitations. Each defendant contends that Plaintiff's original complaint was filed more than one year after the date that Plaintiff's cause of action arose and is therefore time-barred. Defendant Russell additionally contends that even if Plaintiff's original complaint is deemed timely, the claims against him in the amended complaint are barred by the statute of limitations, and would not relate back to the original complaint under Rule 15(c) of the Federal Rules of Civil Procedure because there was no mistake in naming the Jack Doe, M.D. defendant.

On the evening before oral arguments were conducted, Plaintiff filed a supplemental brief that included exhibits pertaining to SB0850, which is the bill that amended the Tennessee statute at issue in this matter, Tenn. Code. Ann. § 28-1-106. DE 107. In light of this last minute filing, Defendants were permitted to file responses to Plaintiff's supplemental brief. DE 116, 120, 121. Plaintiff filed a subsequent reply that addressed all three of these responses. DE 124.

Plaintiff advances state law arguments in maintaining that there are material issues of fact about when the incident giving rise to his claims occurred and when the cause of action accrued. Plaintiff further maintains that, similarly, the application of Rule 15(c) depends on a factual inquiry that is not appropriate for a motion for judgment on the pleadings in this case.

## ANALYSIS

### Statute of Limitations

For § 1983 claims, the governing statute of limitations is provided by the law of the state in which the suit is brought. *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005); see also *Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985). Tennessee law provides a one-year statute of limitations for civil actions brought under federal rights statutes. Tenn. Code Ann. § 28-3-104(a)(3); *Roberson*, 399 F.3d at 794; *see also Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 547 (6th Cir. 2000); *Berndt v. Tennessee*, 796 F.2d 879, 883 (6th Cir. 1986).

However, for a § 1983 claim, the date on which the statute of limitations begins to run is a question of federal law. *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997). Under federal law, the statute of limitations accrues when the plaintiff knows or has reason to know of the injury that forms the basis of his action. *Id*. This inquiry is objective, and the court looks to what event should have alerted the typical or average lay person to protect his rights. *Hughes v. Vanderbilt University*, 215 F.3d 543, 548 (6th Cir. 2000).

Objectively, the events described in Plaintiff's complaint would have alerted the typical lay person that he had a cause of action. Plaintiff argues that this does not end the inquiry in this particular case, however, because his amended complaint states that the events occurred *on or about*

August 21, 2013.  DE 10 at ¶ 10. Despite this allegation, Plaintiff later admitted in response to Defendant City of Franklin's motion for summary judgment that the records indicate that the events giving rise to the complaint occurred exactly on August 21, 2013.  Defendant City of Franklin's statement of undisputed material facts submits that the relevant medical records indicate that Plaintiff was admitted to and discharged from Williamson Medical Center on August 21, 2013. DE 73 at ¶¶ 29, 37-38.  Instead of responding to each asserted statement of undisputed material fact, Plaintiff responded generally that "all statements in [Defendant City of Franklin's] 'Statement of Facts', although not 'material', are undisputed for purposes of ruling on the motion for summary judgment only." DE 92 at 1.  Plaintiff also conceded in his response to Defendant City of Franklin's motion that the "incident alleged in his complaint occurred on August 21, 2013."  DE 89 at 2.  Additionally, several of the answers filed on behalf of the City of Franklin defendants state that, "[t]his Defendant admits [Franklin Police Department] Officers encountered the Plaintiff on August 21, 2013 . . . ." DE 31 at ¶ 10; DE 32 at ¶ 10; DE 34 at ¶ 10; DE 37 at ¶ 10; DE 38 at ¶ 10; DE 39 at ¶ 10.

Defendant WMC's statement of undisputed material fact similarly states that Plaintiff was taken to Williamson Medical Center on August 21, and discharged shortly thereafter on August 21. DE 63 at ¶¶ 1, 3.  Because this document and other documents submitted by Defendant City of Franklin were either redacted or filed under seal, Plaintiff filed a motion requesting that, among other things, these defendants "properly serve all documents to the plaintiff, in unsealed and unredacted form . . . ." DE 79 at 1.  The Court granted this motion "to the extent that the defendants shall serve plaintiff's counsel with unredacted versions of all filings filed under seal or filed with portions

redacted." DE 87 at 2. However, even before this order was entered, counsel for Defendant WMC provided counsel for Plaintiff with a copy of its statement of undisputed material facts.[1] There were no redacted portions in this document. DE 63.

Nevertheless, Plaintiff apparently failed to provide a response to Defendant WMC's statement of undisputed material facts, in violation of Local Rule 56.01(c). The Court therefore admits the statements contained therein, including the aforementioned statements that Plaintiff was taken to and discharged from Williamson Medical Center on August 21, 2013, as undisputed material facts. *See Simpson v. Bredesen*, No. 2:10-CV-02950-JPM, 2015 WL 5655999, at *4 (W.D. Tenn. Sept. 24, 2015), *appeal dismissed* (Dec. 14, 2015) (internal citations omitted) ("When a nonmoving party fails to respond to a summary judgment motion in the time frame set by the local rules, district courts in the Sixth Circuit have largely 'consider[ed] the [moving party's] statement of material facts to be undisputed for purposes of the instant motion of summary judgment.'").

Additionally, it is undisputed that Plaintiff called an attorney from the emergency room after he had been transported there by police officers to "explain[] what was happening" with respect to the blood and urine samples. DE 10 at ¶ 15; DE 73 at ¶ 10; DE 92.[2] By calling an attorney while

---

[1] Plaintiff conceded that counsel for Defendant WMC provided this statement of undisputed material fact on June 16, 2015 (DE 80 at 2), which was over one month before the Court's order was entered. DE 87.

[2] Recently held oral arguments suggest that most, if not all, of the parties to this lawsuit have pivoted from their original positions regarding Plaintiff's competency on the date in question. In his amended complaint, Plaintiff claims that he "strongly denied being on any drugs and clearly refuted any notion that he was in need of medical treatment" to the officers who detained him. DE 10 at ¶ 11. Plaintiff now claims, however, that he "could not have known he was injured nor been able to distinguish truth from fiction[.]" DE 91 at 8. As noted *infra*, the Court finds that, at a minimum, Plaintiff's own descriptions in his amended complaint of first asking for an attorney and then calling an attorney to explain "what was happening" (DE 10 at ¶) are objective indications that Plaintiff recognized the need to seek advice regarding his rights, notwithstanding any other facts or

detained in the emergency room, Plaintiff demonstrated (both objectively and subjectively) that he felt the need to protect his rights. Finally, counsel for Plaintiff conceded during oral arguments that there was no dispute that the events in question occurred on August 21, 2013. The Court therefore finds that there is no genuine dispute that Plaintiff knew or had reason to know of the alleged injury forming the basis of this action on August 21, 2013.[3] Accordingly, the Court finds that Plaintiff's cause of action accrued on August 21, 2013.[4]

In light of this finding, the Court turns to the crux of Plaintiff's defense to both motions for summary judgment and the motion for judgment on the pleadings, which argues that Plaintiff's cause of action was tolled until the following day, August 22, 2013, thereby making his August 22, 2014 filing of the complaint a timely commencement of this action. The parties do not dispute that the applicable statute of limitations for this action is one year. DE 89 at 4, n.4. Plaintiff asserts, however, that because he was initially deemed incompetent upon admission to Williamson Medical Center on August 21, 2013 (DE 91 at 7-8), the statute of limitations is tolled until the following day.

---

circumstances surrounding Plaintiff's admission to and treatment at Williamson County Medical Center. The Court finds that Plaintiff's current position that there is no way of knowing if Plaintiff even called an attorney or what Plaintiff may have discussed with an attorney is tortured beyond credibility.

[3] For purposes of the motion for judgment on the pleadings, the Court makes this finding from Plaintiff's amended complaint. *See* DE 10 at ¶ 15. For purposes of the motions for summary judgment, the Court makes this finding additionally from the undisputed facts. *See* DE 73 at ¶ 10; DE 92.

[4] As noted, the Court makes this finding for purposes of both its consideration of the motion on the pleadings and of the motions for summary judgment. Nevertheless, to the extent that any of the facts discussed herein are based on information outside the pleadings, which may arguably operate to make Defendant Russell's motion one for summary judgment rather than one for judgment on the pleadings, the Court notes that all parties had ample opportunity to present pertinent materials. *See Northville Downs v. Granholm*, 622 F.3d 579, 585 (6th Cir. 2010).

Plaintiff correctly recites the rule that application of a state's tolling statute is appropriate in a § 1983 case, unless it would be inconsistent with the federal policy underlying the § 1983 claim. *Bishop v. Children's Center for Development Enrichments*, 618 F.3d 533, 537 (6th Cir. 2010) (citing *Bd. of Regents v. Tomanio*, 446 U.S. 478, 485 (1980)). The Supreme Court has held that a state's decision to toll the statute of limitations during the period of a plaintiff's disability does not frustrate, but instead enhances, the goals of § 1983. *Hardin v. Staub*, 490 U.S. 536, 543 (1989).

Tennessee law provides the following with respect to the tolling of the statute of limitations due to incompetency:

> If the person entitled to commence an action is, at the time the cause of action accrued … adjudicated incompetent, such person … may commence the action, after legal rights are restored, within the time of limitation for the particular cause of action, unless it exceeds three (3) years, and in that case within three (3) years from restoration of legal rights.

Tenn. Code Ann. § 28-1-106. The individual must therefore have been "adjudicated incompetent" at the time the cause of action accrued in order to toll the statute of limitations.[5]

The phrase "adjudicated incompetent" in the current version of Tenn. Code Ann. §28-1-106 was added by amendment effective July 1, 2011, which replaced the phrase "of unsound mind" with "adjudicated incompetent." *See* 2011 Tenn. Pub. Act 47 § 17. By the same amendment, the phrases "legal rights are restored" replaced "the removal of such disability" and "restoration of legal rights" replaced "removal of such disability." *Id*. Plaintiff argues that this amendment effected no substantive change in the law, and that the test for determining whether an individual is incompetent for purposes of tolling the statute of limitations remains the same as under the prior version of the

---

[5] Tenn. Code Ann. § 28-1-108 states that no person can claim use of a "disability" unless it existed when the right of action accrued.

statute; namely, "whether that individual was unable to manage his or her day-to-day affairs at the time the cause of action accrued." *Sherrill v. Souder*, 325 S.W.3d 584, 601 (Tenn. 2010). Plaintiff contends that neither summary judgment nor judgment on the pleadings is appropriate because a genuine dispute exists as to Plaintiff's ability to manage his day-to-day affairs on August 21, 2013.

The Tennessee Supreme Court has established clear and plain methods for interpreting Tennessee statutes:

> When we interpret a statute, we must ascertain and give full effect to the General Assembly's intent. *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 309 (Tenn. 2008). Our primary concern is to carry out this intent without unduly expanding or restricting the language of the statute beyond the legislature's intended scope. *Premium Fin. Corp. of Am. V. Crump Ins. Servs. of Memphis, Inc.*, 978 S.W.2d 91, 93 (Tenn. 1998). Furthermore, "[w]e presume that every word in a statute has meaning and purpose and should be given full effect if so doing does not violate the legislature's obvious intent." *State v. Casper*, 297 S.W.3d 676, 683 (Tenn. 2009).

> When the statutory language is clear and unambiguous, we apply the plain meaning of the statute. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). When the language is ambiguous, however, we look to the "broader statutory scheme, the history of the legislation, or other sources to discern its meaning." *Casper*, 297 S.W.3d at 683. In doing so, we must also presume that the General Assembly was aware of the state of the law at the time it enacted the statute at issue. *Id.* Finally, statutes relating to the same subject or having a common purpose should be construed together. *Graham v. Caples*, 325 S.W.3d 578, 582 (Tenn. 2010) (internal quotation marks omitted).

*Westgate Smoky Mountains at Gatlinburg v. Phillips*, 426 S.W.3d 743, 478, No. E2011-02538-SC-R-11-CV, 2013 WL 6800368, at *4 (Tenn. Dec. 23, 2013). *See also Abels ex rel. Hunt v. Genie Indus.*, 202 S.W.3d 99, 102 (Tenn. 2006) ("[E]xceptions to a limitations statute in favor of persons under disability should be strictly construed and never extended beyond their plain import.").

The revised language in the tolling statute is clear and unambiguous. The term "adjudicated incompetent," by any reasonable interpretation, means that the person must have been the subject of judicial declaration that he was incompetent to handle his own affairs as a matter of law. *See Black's Law Dictionary* (9th ed. 2009) ("adjudicate" means to "rule upon judicially"). The legislature's use of past tense and the phrase "at the time the cause of action accrued" also clearly requires that incompetency be declared *prior* to the injury-causing event. *See Amos v. Metro Gov't of Nashville and Davidson Cnty.*, 259 S.W.3d 705, 713 (Tenn. 2008) ("This Court recognizes the importance of verb tense in a [statutory] phrase."). Likewise, the use of the phrases "after legal rights are restored" and "restoration of legal rights" instead of "removal of such disability" evinces a shift from a subjective standard to an objective one. *See Casper*, 297 S.W.3d at 683 (every word is presumed to have a meaning and purpose).

Notwithstanding Plaintiff's detailed and well-reasoned arguments, both the Sixth Circuit and the Tennessee Court of Appeals have determined that the "adjudicated incompetent" language contained in Tenn. Code Ann. § 28-1-106 requires a judicial declaration of incompetence to toll the statute of limitations. In an unreported decision, the Sixth Circuit noted that the plain meaning of "adjudicate" means to "rule upon judicially," and thus found that the Tennessee legislature intended to require a judicial determination of incompetency and a subsequent "restoration of legal rights" before the statute of limitations begins to run. *Cobb v. Tennessee Valley Auth.*, 595 F. App'x 458, 459 (6th Cir. 2014) (citing *Black's Law Dictionary* (9th ed. 2009)). The Sixth Circuit therefore affirmed the district court's holding that, under Tennessee law, the one-year limitations period could not be tolled without a judicial declaration of the subject plaintiff's incompetence. *Id*. at 460.

In a more recent decision, the Tennessee Court of Appeals similarly found that a judicial determination is required to toll the statute of limitations under Tenn. Code Ann. § 28-1-106 based on a contextual analysis of the statute:

> [O]ur review of the statute at issue demonstrates that the meaning of the phrase "adjudicated incompetent" is clarified by the surrounding language in the statute. Specifically, the statute provides that the plaintiff may commence the action "after legal rights are restored" within the applicable statute of limitations unless that time exceeds three years and, in that case, within three years "from restoration of legal rights." Tenn. Code Ann. § 28-1-106. Pursuant to *nosicur* [sic] *a sociis,* the term "adjudicated incompetent" must be read in conjunction with the other parts of the statute that clearly contemplate a loss and restoration of "legal rights." Undoubtedly, it is the courts, rather than physicians, who can adjudicate an individual's legal rights.

*Johnson v. Uhs of Lakeside, LLC*, No. W2015-01022-COA-R3-CV, 2015 WL 9426034, at *6 (Tenn. Ct. App. Dec. 23, 2015). Additionally, and significantly, the Court of Appeals determined that this reasoning was supported by a prior decision in which it held that the term "adjudication of incompetency" referred to an order appointing a conservatorship, which "impl[ied] that this term denotes judicial action." *Id.* (citing *Foster v. Allbright*, 631 S.W.2d 147, 150 (Tenn. Ct. App. 1982)). *See also Efferson v. Stephens*, No. M2014-00326-COA-R3-CV, 2015 WL 544849, at *2, n.2 (Tenn. App. Feb. 9, 2015) ("The current version of Tenn. Code Ann. § 28-1-106, effective July 1, 2011, requires an adjudication of incompetence to toll the statute of limitations. The 2007 version does not.").

While the Court finds that the language of the statute is clear, to the extent any ambiguity exists, the Court agrees with the Tennessee Court of Appeals' application of *noscitur a sociis* in determining the meaning of "adjudicated incompetent." Tennessee courts have frequently employed the interpretive maxim *noscitur a sociis* – a word is known by the company it keeps – to determine

the meaning of "questionable or doubtful" terms. *City of Goodlettsville, Tenn. v. Priceline.com, Inc.*, 844 F. Supp. 2d 897, 905 (M.D. Tenn. 2012) (citing *Sallee v. Barrett*, 171 S.W.3d 822, 828-29 (Tenn. 2005)). *See also Steppach v. Thomas*, 346 S.W.3d 488, 507 (Tenn. Ct. App. 2011); *Mahoney v. Mahoney*, 186 F. Supp. 636, 638 (E.D. Tenn. 1960); *State v. Beeler*, 387 S.W.3d 511, 524 (Tenn. 2012) ("[W]ords are known by the company they keep.") (citation omitted). For this additional reason, to toll the statute of limitations, Tenn. Code Ann. § 28-1-106 requires that "a plaintiff's mental incompetency must have been judicially adjudicated at the time his cause of action accrued." *Johnson*, 2015 WL 9426034, at *7.

In his reply brief, Plaintiff argues that this reasoning is flawed based on discussions that took place before the Tennessee General Assembly. Plaintiff quotes the statements of multiple state senators and representatives in support of his contention that the purpose of the amendment to Tenn. Code Ann. § 28-1-106, which introduced the terms "adjudicated incompetent" and "restoration of legal rights" to the statute, was "merely to change language" that was offensive to certain groups of people. DE 124 at 2. This includes statements that the amendment was intended only to "replace outdated language with person-centered language," and that the amendment "has no change of policy." *Id*.

Plaintiff finds merit for his arguments because the statements made by various members of the Tennessee General Assembly regarding the subject amendment are at best confusing in light of the decision to use the term "adjudicated" in the amendment, which clearly suggests the involvement of the judiciary. However, as noted by the Sixth Circuit, the plain meaning of "adjudicate" means to "rule upon judicially." *Cobb*, 595 F. App'x at 458 (citing *Black's Law Dictionary* (9th ed. 2009)). The Court also notes that Webster's New World College Dictionary holds "adjudicate" to mean "to

hear or decide a case" or "to serve as a judge."[6]  Similarly, Oxford English Dictionary, which the

Supreme Court of the United States has identified as "one of the most authoritative" dictionaries,[7]

defines "adjudicate" in the following way: "[t]o pronounce or decree by judicial sentence, or by a

similar legal or official ruling."[8]  These definitions are significant because, as noted by the Tennessee

Court of Appeals, the term "adjudicated incompetent" is not defined in Title 28 of the Tennessee

code.  *Johnson*, 2015 WL 9426034, at *5.

That "adjudicated incompetent" is legally distinct from "unsound mind" is further supported

by the legislature's shift from "after the removal of such disability" to "after legal rights are

restored."  One can be of unsound mind or "incompetent" yet never have lost any legal rights subject

to restoration.

Finally, Plaintiff's contention that comments by members of the General Assembly

demonstrate that the amendment merely revamped terminology without recasting legal rights is

unavailing because, as noted by the Tennessee Court of Appeals:

> We must be cautious about consulting legislative history.  A statute's meaning must
> be grounded in its text.  Thus, comments made during the General Assembly's
> debates cannot provide a basis for a construction that is not rooted in the statute's
> text.  *When a statute's text and the comments made during a legislative debate
> diverge, the text controls*.

*Midwestern Gas Transmission Co. v. Baker*, No. M2005-00802-COA-R3-CV, 2006 WL 461042,

at *4 (Tenn. Ct. App. Feb. 24, 2006) (emphasis added).[9] Considering the plain language and entire

---

[6] *Webster's New World College Dictionary* 18 (5th ed. 2014).

[7] *Taniguchi v. Kan Pac. Saipan, Ltd.*, ___ U.S. ___, 132 S. Ct. 1997, 2003, 182 L. Ed. 2d 903 (2012).

[8] "adjudicate, v."  *OED Online*.  Oxford University Press, March 2016.

[9] Notably, the Tennessee Court of Appeals in *Johnson* held that the plain language of the statute supplies the answer to the question of whether a judicial adjudication of incompetency is required under the revised language of the tolling statute, despite the invitation of the plaintiff in that

context of the tolling statute, and the directives of Tennessee courts for construction of Tennessee statutes, the Court declines to rely on the legislative history of Tenn. Code Ann. § 28-1-106, and finds that Plaintiff's argument must therefore fail.

Reading Tenn. Code Ann. § 28-1-108 in conjunction with the current version of Tenn. Code Ann. § 28-1-106, Plaintiff's mental incompetency must have been judicially adjudicated at the time his cause of action accrued. Plaintiff was not "adjudicated incompetent" for purposes of the tolling statute at the time of accrual of his cause of action, and thus had one year from August 21, 2013 in which to file suit.[10] Because Plaintiff failed to do so, this case is untimely and must be dismissed. Defendants are therefore entitled to judgment as a matter of law.

### Certification to Tennessee Supreme Court

Plaintiff in this matter has also requested that the Court certify the question of whether a judicial determination is required for an individual to have been "adjudicated incompetent" under Tenn. Code Ann. § 28-1-106. "The decision whether or not to utilize a certification procedure lies

---

case to look to the legislative history. *Johnson*, 2015 WL 9426034, at *6.

[10] Plaintiff additionally argues in his response to Defendant City of Franklin's motion for summary judgment that because Defendant Russell "adjudicated [Plaintiff] as incompetent . . . the tolling of the statute of limitations was tolled for at least 24 hours." DE 91 at 9. Without citing to a specific statute, he argues that this twenty-four hour period delayed the running or commencement of the statute of limitations until the following day, August 22, 2013. *Id*. Notably, the Tennessee Court of Appeals expressly admonished that adjudication of incompetency is for the courts, not physicians. *Johnson v. Uhs of Lakeside, LLC*, 2015 WL 9426034, at *6 ("Undoubtedly, it is the courts, rather than physicians, who can adjudicate an individual's legal rights."). Moreover, Tenn. Code Ann. § 33-6-414, which appears to be the statute upon which Plaintiff relies, states that an admitting medical facility *may* hold the individual in question for "not more than twenty-four (24) hours . . . ." Here, Plaintiff was discharged shortly after being admitted on August 21, 2013. DE 60 at 3-4; DE 63 at ¶ 3; DE 69 at 2-3. The Court finds no support in either the tolling statute or the involuntary admissions statute for Plaintiff's position that the running of the statute of limitations was tolled until the following day.

within the sound discretion of the district court." *Transamerica Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995). Federal courts will not generally "trouble our sister state courts every time an arguably unsettled question of state law comes across our desks." *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009) (citation omitted). Here, the Court's decision is based on well-established principles of statutory construction as well as consistent opinions from both the Sixth Circuit and the Tennessee Court of Appeals. The question is not unsettled, and the Court therefore declines to certify this question to the Tennessee Supreme Court.

## CONCLUSION

The Court understands the seemingly harsh nature of this ruling, and is not without sympathy that it leaves Plaintiff without a remedy for the brutal indignities he suffered because of a limitations period missed by one day. However, the Court is not permitted to allow sympathy to enter into its decisions on matters of law. *Johnson v. U.S. Postal Serv.*, 863 F.2d 48 (Table), 1988 WL 122962, at *3 (6th Cir. Nov. 16, 1988) ("If courts were to toll the limitation period whenever a plaintiff was one day late, the effect would be to create a [one-year and one day] limitation period."). *See also Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152, 104 S. Ct. 1723, 1726, 80 L. Ed. 2d 196 (1984) ("Procedural requirements ... for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants.").

Based on the foregoing, the motions for summary judgment filed by Defendants WMC (DE 65) and City of Franklin (DE 68) are GRANTED. Because the Court has found no material

issue as to when the statute of limitations began to run, Defendant Russell's motion for judgment on the pleadings (DE 75) is also GRANTED.

An appropriate Order will follow.[11]

BARBARA D. HOLMES
United States Magistrate Judge

---

[11] The Court declines to address Defendants' argument that Plaintiff was required to affirmatively plead an exception to the limitations statute, except to say there is support for that position in this case. *See e.g. Reid v. Baker*, 832 F.2d 354, 356 (6th Cir. 1987) (when the court can determine from the complaint that the period for bringing an action has expired, a plaintiff must affirmatively plead an exception to the limitations statute). Further, because Defendant Russell's motion for judgment on the pleadings is granted based on the untimeliness of this action, it is unnecessary to reach the Fed. R. Civ. P. 15(c) issues raised by Defendant Russell.